THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| THE WOODS APARTMENTS, LLC, MICHAEL BLANKENBAKER, and PROFESSIONAL PROPERTY MANAGERS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Court No.: 3:11-cv-00041-JBC |
| v. | ) ) | |
| UNITED STATES FIRE INSURANCE CO., and CRUM & FORSTER, a Fairfax Company | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT U.S. FIRE'S MOTION TO DISMISS DUE TO PLAINTIFFS' INTERFERENCE IN THE APPRAISAL PROCESS**

Now comes Defendant, UNITED STATES FIRE INSURANCE COMPANY ("U.S. Fire"), by and through its attorneys, and makes this Motion to Dismiss Due to Plaintiffs' Interference in the Appraisal Process, and in support of that motion states as follows:

**Introduction and Background**

This Court's May 30, 2012 order (Docket # 51) contained two holdings:

1.  That the dispute between Plaintiffs and U.S. Fire regarding the Hurricane Ike damage to The Woods Apartment complex was subject to appraisal under the insurance policy, with Richard Moore acting as Plaintiffs appraiser and U.S. Fire being required to name an appraiser within 30 days; and

2.  That public adjuster Richard Michelson could not serve as Plaintiffs' appraiser because, having been hired by Plaintiffs to present their claim to U.S. Fire, he could not satisfy the policy requirement that the appraisers be impartial.

1

U.S. Fire named Mr. Lorey Caldwell as its appraiser on June 26, 2012, and on July 6, 2012 this Court entered the agreed scheduling order presented by the parties.  That schedule included a July 24, 2012 deadline for the parties to provide existing information to the appraisers, and a September 14, 2012 deadline for the appraisers to exchange any additional information and to meet and jointly inspect the property.  Pursuant to the Court's orders, the two appraisers acting for the parties agreed to jointly inspect the 18 buildings at The Woods Apartment complex alleged to have sustained damage from Hurricane Ike on September 11 through September 13, 2012.

On September 6, 2012, Plaintiffs' counsel began interfering with the joint inspection agreement made by the appraisers, claiming not to understand what the appraisers were going to do during their joint inspection, complaining about the costs of the arrangements the appraisers made to access the roofs at The Woods, and suggesting Plaintiffs would be controlling the conduct of the appraiser they appointed, Richard Moore.

U.S. Fire's counsel repeatedly communicated with Plaintiffs' attorney, receiving assurances that the joint inspection would proceed without interference by either of the parties. Unfortunately, those assurances were repeatedly contradicted by subsequent e-mails or voicemails from Plaintiffs' attorney, and finally by the conduct of Plaintiffs' paid advocates at The Woods, during the joint inspection.

Despite the assurances of Plaintiffs' attorney that the joint inspection would proceed without interference, when the inspection began on September 11, 2012, the appraisers were met at The Woods by none other than Richard Michelson, Plaintiffs' public adjuster (and the very same Richard Michelson who this Court ordered could not serve as Plaintiffs' appraiser), and Michael Mayor, a building consultant hired by Plaintiffs and disclosed as a witness who had

previously inspected Plaintiffs' property.  Michelson and Mayor insisted on participating in the

inspection. The appraisers decided to inspect building siding on September 11, 2012 and, after

some discussion among the parties, were left alone to do their joint inspection without being

accompanied by Michelson and Mayor.

Upon returning to The Woods on September 12, 2012, the appraisers were again met by

Michelson and Mayor.  Discussions ensued as Michelson and Mayor again wanted to accompany

the appraisers on their joint inspection.  While Michelson departed, Mayor continued to insist on

joining the appraisers in the inspection of the roofs.  On being advised of the situation, counsel

for U.S. Fire again contacted Plaintiffs' attorney.  Plaintiffs' attorney assured U.S. Fire's counsel

that he had not instructed Michelson or Mayor to participate in the joint inspection and that he

would contact them to confirm that they were not to trying to interefere in the process.

However, despite the assurances of Plaintiffs' attorney, Mayor continued to accompany

Mr. Moore on the roof inspections, pointing out and commenting on conditions on the roofs.

When Mr. Caldwell asked about communications from Plaintiffs' attorney, Moore and Mayor

told him they had received none.  Caldwell sought out Michelson who similarly told Caldwell he

had not received any further communications from Plaintiffs' attorney about him or Mayor

accompanying the appraisers on the inspection.  In fact, Michelson told Caldwell these matters

would have to be "discussed among the attorneys".

Because Plaintiffs were plainly bent on controlling the joint inspection between the

"competent and impartial" appraisers, and continued to interfere in the joint inspection by having

their own paid advocate participate in the inspection, U.S. Fire asked its appraiser, Mr. Caldwell,

to leave the premises so that it could seek relief from the Court.

3

## PLAINTIFFS' REPEATED ATTEMPTS TO DIRECT AND CONTROL THE APPRAISAL PROCESS

Initially the appraisal moved forward in accordance with the Court's scheduling order and like the informal, cost effective process described in Plaintiffs' motion papers submitted in support of their motion to compel appraisal. The parties provided documents to the appraisers and each other's counsel in accordance with the court's order. (See, Ex. A, affidavit of Lorey M. Caldwell, ¶4). On September 4, 2012, the appraisers spoke to each other and scheduled the required joint inspection of The Woods apartment complex. (Ex. A, Caldwell affidavit, ¶5). The appraiser appointed by Plaintiffs, Richard Moore, understandably contacted Plaintiffs to let them know when the joint inspection of the property would occur. At this point, Plaintiffs and their attorney began the campaign to direct and control the participation of their appointed appraiser, Richard Moore, in the appraisal process.

The initial salvo in Plaintiffs' effort to control the appraisal process was a September 6, 2012 e-mail from Plaintiffs' attorney to Richard Moore. Mr. Moore sent the e-mail on to the appraiser appointed by U.S. Fire, Lorey Caldwell; Caldwell sent the e-mail to U.S. Fire's attorneys. In his e-mail, Plaintiffs' attorney acknowledged the inspection but also said, *"Mr. Blankenbaker[1] does not want to have to pay for the roofers and ladder trucks"* and *"Mr. Blankenbaker is not necessarily in a position to pay anyone to be there the entire three days with Mr. Caldwell. We would probably have a separate expert inspect the roofs on our part, and we will need an inspection."* (See, Ex. B, Foran affidavit ¶6 and 7, and Exhibit 2 to the affidavit). Counsel for U.S. Fire left a voicemail message for Plaintiffs' attorney and sent him an e-mail advising that the appraisers were apparently going to conduct the joint inspection of the property so they could assess the Hurricane Ike damage to the property; the e-mail also directed

---

[1] Michael Blankenbaker is an individual named Plaintiff and managing member of Plaintiff, The Woods Apartments, LLC.

Plaintiffs' counsel to the appraisal provision of the policy, which addressed the manner in which the parties would bear the costs of the appraisal. Plaintiffs' attorney immediately replied to the e-mail at 3:12 p.m., stating "I will call". Plaintiffs' attorney called the office of U.S. Fire's attorney at 8:28 p.m. that evening and left a voicemail. (See Ex. 2 to Ex. B, the Foran Affidavit.)

In his September 6, 2012 voicemails, Plaintiffs' attorney claimed not to understand what the appraisers would be doing during their scheduled inspection of the property and continued to voice Plaintiffs' determination to control the appraiser that Plaintiffs appointed, saying: ***"…but if your guys there for 3 days, we're gonna have him there that doesn't mean we want our guy on the roof for the 3 days"*** and ***"we don't want to put our guy on there and try to have a shingle by shingle debate with him."*** U.S. Fire's attorney prepared a letter sent to Plaintiffs' attorney on September 7, 2012. The letter is attached as Exhibit 3 to the Foran affidavit, Ex. B at ¶8. The letter reminded Plaintiffs' counsel that the appraisers' joint inspection of the property was being made pursuant to the Court's July 6, 2012 order and so that the appraisers could each make their independent evaluations of the Hurricane Ike damage as required by the appraisal clause of the policy. The letter also advised counsel that it was improper to attempt to control the activities of the "competent and impartial" appraisers appointed by the parties. Finally, the letter reminded counsel that Richard Michelson, who was copied on an e-mail from Plaintiffs' appointed appraiser, could not act as Plaintiffs' appraiser given the Court's May 30, 2012 order, and that U.S. Fire would vigorously object to any attempts to involve Michelson in the appraisal process.

On September 10, 2012, the day before the scheduled joint inspection, U.S. Fire's counsel spoke with Plaintiffs' attorney. The attorneys agreed that the inspection arranged by the appraisers would go forward as planned. Despite that agreement and the prior correspondence,

Plaintiffs' campaign to control the appraisal continued.  On the 10th, Richard Moore contacted Lorey Caldwell and advised him that the joint inspection would proceed as scheduled, but that conditions had been imposed on Moore's participation in the joint inspection.  Specifically, Moore had been instructed that he could not discuss the scope of the storm damage with Mr. Caldwell or make any agreements with Mr. Caldwell regarding the damage to the property. Instead, Moore was told to collect information for negotiation at a later date.  (Ex. A, Caldwell affidavit, at ¶9) Mr. Caldwell advised counsel for U.S. Fire of the instructions to Plaintiffs' appraiser.

Counsel for U.S. Fire sent an e-mail to Plaintiffs' attorney demanding that Plaintiffs' stop interfering in the appraisal process.  Specifically, the e-mail stated:

> I am told that you have instructed your appraiser, Richard Moore, that while he can participate in the inspection of the roofs at The Woods, he cannot discuss the scope of the storm damage from Hurricane Ike with our appraiser, Lorey Caldwell, or otherwise make any agreements regarding the damage with Mr. Caldwell.
>
> You are improperly interfering in the appraisal process. The appraisers have been appointed to make these decisions without interference from the parties or their attorneys. Please stop attempting to undermine the integrity of the appraisal process and withdraw your instructions to Mr. Moore, so that the appraisers can actually attempt to see if they can reach any agreements regarding the alleged damage to The Woods. Should you continue to interfere in the process, we will contact the Court.  (Ex. B, Foran affidavit and Ex 4 to that affidavit)

After receiving multiple responses from Plaintiffs' counsel, U.S. Fire's attorney sent an e-mail the following morning, September 11, 2012, stating:

> Our agreement was that the appraisers would continue with their inspection and that we would approach the Court with the appraisers request to alter the current schedule. We did not agree that we could each instruct the appraisers on what to do or not to do. The appraisers are supposed to reach their conclusions independently and see if they can reach agreement.

To which Plaintiffs counsel replied:

6

Correct. You type better than me. Without all information gathered there probably are no final opinions yet. I don't see how there could be. I will send an email once it is typed. (Ex. B, Foran affidavit and Ex 4 to that affidavit)

That same morning, when the appraisers arrived on site to begin their joint inspection, they were met by Mike Mayor, a building consultant hired by Plaintiffs, who had previously inspected The Woods, and Plaintiffs' public adjuster, Richard Michelson; the same Richard Michelson this Court barred from acting as an appraiser in this matter. The appraisers decided to begin the joint inspection by examining the siding on the buildings. Messrs. Michelson and Mayor twice attempted to accompany the appraisers as they inspected the siding, but ultimately relented and allowed the appraisers to proceed with their inspection while unaccompanied. However, Plaintiffs' earlier instructions to Mr. Moore had apparently served Plaintiffs' purpose, as Moore refused to engage in any substantive discussions with Caldwell about whether or not portions of the siding had sustained storm damage. (Ex. A, Caldwell Affidavit, at ¶11).

Plaintiffs' attorney also followed up with another e-mail to counsel for U.S. Fire on September 11, 2012. On this e-mail Plaintiff copied his client, Mike Blankenbaker (mrb@mybestapt.com), the appraiser appointed by Plaintiffs, Richard Moore (Rwmmoore@aol.com), and Plaintiffs' public adjuster, Richard Michelson. These people were not copied on previous e-mails exchanged between the attorneys. The purpose of copying them on this e-mail is transparent. This e-mail clearly instructs Richard Moore about how, in Plaintiffs' view, he is supposed to conduct the appraisal. Again, Plaintiffs insist on directing Mr. Moore's activities, telling him they do not want a detailed inspection of the property a/k/a an evaluation of storm damage "on a shingle by shingle basis". Further, Plaintiffs apparently refuse to even acknowledge that this joint inspection was ordered by the Court, pursuant to an agreed

7

schedule submitted by the parties.  Instead, perhaps as a sop to the client he has now copied on

this e-mail, Plaintiffs' attorney suggests skullduggery on the part of U.S. Fire's appraiser:

> Ordinarily, when the insurance company inspects the premises during the
> appraisal process or otherwise, it pays for its own ladders and the persons
> necessary to get the inspector onto the roof. And that is what you did in our other
> case[2]. Mr. Caldwell has figured out how to convert this into a joint inspection and
> avoid paying for the full cost of the ladders and the people to help him get onto
> the roof, as was done in our other case, and plaintiffs have agreed to pay half the
> cost of that provided that it occurs this week, although I do not think Mr. Moore
> was required to agree to that.  (Ex. B, Foran affidavit and Ex. 5 to that affidavit)

Things degenerated the following day, as the inspection of The Woods moved to the

roofs of the apartment buildings.  In addition to the appointed appraisers, Michelson and Mayor

were again present and insisting on their supposed right to accompany the appraisers on the roof

inspections.  (Ex. A, Caldwell affidavit at ¶12)  U.S. Fire's counsel was informed of the situation

and contacted Plaintiffs' attorney.  Plaintiffs' attorney denied instructing Mayor and Michelson

to accompany the appraisers and said he would contact Mayor or Michelson to resolve the issue.

(Ex. B, Foran Affidavit at ¶12)  Despite the assurances of Plaintiffs' attorney, Mike Mayor

continued to insist on accompanying the appraisers on the roof inspections.  (Ex A, Caldwell

Affidavit at ¶14-17)  As a result, counsel for U.S. Fire sent Plaintiffs' attorney another e-mail

which said:

> While your public adjuster, Richard Michelson is now looking at siding, I
> understand Mike Mayor, your contractor, is insisting on following the appraisers
> around on the roof and is actually leading the inspection and pointing out items to
> Richard Moore. This is improper interference in the appraisal process. You have
> placed your advocate on the roof in the midst of the process and your appraiser,
> Richard Moore is not operating independently, but being fed his conclusions by
> your advocate. Moore says he has not heard from you this morning since our 9:40
> am (EDT) call. This is a perversion of the appraisal process and U.S. Fire is not

---

[2] The other case referenced by Mr. Lamb involves a separate storm damage claim to U.S. Fire by a different
property owner.  Mr. Lamb is mistaken to compare the two cases as no appraisal took place in the other matter.
What the two cases have in common, in addition to Mr. Lamb, is that Messrs. Michelson and Mayor also represent
the property owner in the other matter.

going to participate in a sham appraisal, where your advocates dictate the conclusions of your purportedly competent and impartial appraiser.

The next time Mr. Caldwell has available for an inspection of the roofs at The Woods is in mid-October. Unless this charade stops now, and Messrs Moore and Caldwell are permitted to operate independently, without interference from your hired advocates, we will be forced to go to court.  (Ex. 6 to Foran Affidavit, attached hereto as Ex. B)

When, after a time, the situation remained unchanged, U.S. Fire's attorney asked Lorey Caldwell to leave the site and go to the offices of U.S. Fire's attorney, William Wetterer, to prepare an affidavit documenting the above.  (Ex. A, Caldwell Affidavit at ¶18 and, Ex. B, Foran Affidavit at ¶13).

## COMPETENT & IMPARTIAL APPRAISERS MUST CONDUCT THE APPRAISAL

On May 30, 2012, this Court held that the dispute between the parties was subject to appraisal, pursuant to the following provision of the insurance policy:

### Appraisal

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.  Each party will:

a.    Pay its chosen appraiser; and

b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

Additionally, this Court held that Richard Michelson, the appraiser originally proffered by Plaintiffs, did *not* qualify as an impartial appraiser because Plaintiffs previously hired Michelson to present their claim to U.S. Fire.  Instead, the Court ordered that Richard Moore, an

alternative appraiser put forward by Plaintiffs, would serve as Plaintiffs' appraiser.  (Docket #51).

In their motion to compel the appraisal of this dispute Plaintiffs said appraisal is "designed to effectively and cost efficiently resolve disputes over the amount owed on an insurance loss by avoiding the substantive and procedural nuisances typically associated with the legal process. . ." (Docket #42 at p. 6) and that "[a]ppraisal would proceed without attorneys present, without presentation of expert witnesses and without cross-examination", (Docket # 42 at p. 7).   Finally, Plaintiffs told this Court that "[a]ppraisers act on their own skill and knowledge."   (Docket #42 at p. 6).   Once the appraisal process was underway, however, Plaintiffs ignored their previous statements to the Court and deliberately tampered with the process.

Plaintiffs also ignored the long standing law applicable to appraisers named to appraise losses under insurance policies.   Requiring "competent and impartial" appraisers means the parties cannot appoint partisan advocates for their positions.   As the Alabama Supreme Court put it in *Hall v. Western Assurance Company,* 133 Ala. 637, 32 So. 257 (1902):

> The purpose of the clause is to secure a fair and impartial tribunal to settle the differences submitted to them.  In their selection it is not contemplated that they shall represent either party to the controversy or be a partisan in the cause of either, nor is an appraiser expected to sustain the views or to further the interest of the party who may have named him.

In accord are, *Huber v. United Farm Family Mutual Insurance Company,* 856 N.E. 2d 713, 717 (Ind. App. 2006) (where the Court noted "appraisers, though selected by the respective parties, must act free from bias, partiality, or prejudice in favor of either of the parties.") *Pennsylvania Fire Insurance Company v. W.T. Waggoner Estate,* 39 S.W. 2d 593, 594 (Tex. App. 1931); *Coon v. National Fire Insurance Company of Hartford,* 213 N.Y.S. 407, 410, 126 Misc. 75, 78 (1925)

10

(where it was observed that the appraisers "should be disinterested, not only without pecuniary interest, but impartial, fair, open-minded, and substantially indifferent in thought and feeling between the parties, and without partisanship and bias either way"); *Phoenix Assurance Company Limited of London, England v. Davis,* 67 F. 2d 824, 825 (5th Cir. 1933) (where the Court noted the appraisal clause "is designed to secure a tribunal acting in a quasi judicial capacity free from partisanship and seeking to do equal justice between parties.")

Nor can it be doubted that Kentucky law follows these same principles.  In *Continental Insurance Company v. Vallandingham & Gentry,* 116 Ky. 287, 76 S.W. 22, 24 (1903), the Court struck down an appraisal award where the conduct of the insurer's appraiser "throughout this transaction was more like that of an employee than of a disinterested person."

The universally accepted corollary to the appraisers' obligation to act as members of a fair and impartial tribunal is that the appraisers do not act as agents of the parties that appointed them and are not subject to the direction and control of those parties, *Figi v. New Hampshire Insurance Company,* 108 Cal. App. 3d 772, 777 (1980); *Hyland v. Millers National Insurance Company,* 58 F. 2d 1003 (9th Cir. 1937).  Otherwise, the appraisal process would be a sham and a pointless waste of time.  As the Court put it in *Norwich Union Fire Insurance Society v. Cohn,* 68 F. 2d 42, 44 (10th Cir. 1933):

> But while appraisers are appointed by the parties, they are not subject to the control of the parties.  (Citations omitted)  They are not agents in law and ought not to be in practice.  If appraisers were subject to the direction of the parties, the whole proceeding would become useless ceremony, for if the parties cannot agree on the loss by direct negotiation (and the appraisal clause is operative only in the case of disagreement) they could not agree through agents subject to their direction.

The Minnesota Supreme Court recognized this as well, finding that it would be "highly improper for the appraiser to submit to the control or influence" of the party making his or her

appointment, *Kavli v. Eagle Star Insurance Company,* 206 Minn. 360, 364, 288 N.W. 723, 726 (1939).  The courts continue to recognize the importance of having appraisers that "should be free from the control and direction of the respective parties . . . and should act independently and upon their own judgment." *Tiger Fibers, LLC v. Aspen Specialty Insurance Company, Ltd.,* 571 F. Supp. 2d 712 (E.D. Va. 2008) quoting *Hurst v. Hope,* 152 Va. 405, 147 S.E. 2d 222, 223 (1929).

## PLAINTIFFS BEAR THE CONSEQUENCES OF SABOTAGING THE APPRAISAL PROCESS AND PLAINTIFFS ACTION SHOULD BE DISMISSED

The appraisal process cannot work unless the appraisers, among and between themselves and without interference from the parties, decide what they are going to do and how they are going to go about doing it.  On September 4, 2012, the appraisers reached an agreement about their joint inspection of the property and set about scheduling the inspection.  At that point, Plaintiffs set about undermining the appraisal process.

On September 6, 2012, Plaintiffs' attorney sent an e-mail, and left voicemail messages for U.S. Fire's attorney, claiming not to understand what the appraisers were going to be doing at The Woods, and then suggested that Plaintiffs would control the actions of their appointed appraiser, Richard Moore, by telling him how long he could be at The Woods to inspect the 18 different buildings Plaintiffs claim were damaged and what kind of inspection he was to conduct. Despite warnings from U.S. Fire's counsel and assurances to U.S. Fire's counsel that Plaintiffs would not interfere in the appraisal, the evidence is unequivocal that they dictated the terms of Moore's participation, telling him not to make a detailed inspection of the allegedly damaged property, and telling him not to discuss his observations about the property or make any agreements with Lorey Caldwell, the appraiser appointed by U.S. Fire.  There is no way the appraisers can, as required by the appraisal provision of the policy, determine if they can agree

on the amount of the loss if they do not share their observations and conclusions about the condition of the property with each other.

Not content with stage managing Richard Moore's participation via the internet, Plaintiffs' put boots on the ground, seeking to involve Richard Michelson, the specific person this Court held could not act as Plaintiffs' appraiser, in the appraisal process. Next they inserted their own advocate, a hired building consultant, Mike Mayor, into the appraisers' inspection of the roofs at the Woods, with Mayor pointing out and commenting on conditions on the roofs. The implication to Mr. Moore could not have been clearer, first Plaintiffs' attorney told him how he would conduct his inspection and how he would interact with the other appraiser, now Plaintiffs' building consultant was telling Mr. Moore what conclusions he would reach.

Plaintiffs' actions destroyed U.S. Fire's right to have the appraisers act as a "fair and impartial tribunal to settle the differences"[3] between U.S. Fire and Plaintiffs, "free from the control and direction of the respective parties . . . act[ing] independently and upon their own judgment."[4] That Kentucky will not countenance such interference in the appraisal process is also clear. In *Hartford Fire Insurance Company v. Asher,* 30 Ky. L. Rptr. 1053, 100 S.W. 233 (1907), one of the insurers' agents was present when the appraisers met to discuss the appointment of an umpire. That agent said the insurers would not agree to an umpire living in the immediate vicinity of the loss. When the insured's appraiser suggested that he and the insurers' appraiser see if they could agree between themselves, the insurers' agent again intervened and objected. Holding that, by their conduct, insurers lost their right to require appraisal, the Kentucky Court of Appeals stated:

---

[3] *Hall v. Western Assurance Company,* 133 Ala. 637, 32 So. 257 (1902).
[4] *Tiger Fibers, LLC v. Aspen Specialty Insurance Company, Ltd.,* 571 F. Supp. 2d 712 (E.D. Va. 2008) quoting *Hurst v. Hope,* 152 Va. 405, 147 S.E. 2d 222, 223 (1929).

> When [insurers] had appointed Albin, and [the insured] had appointed Bowman, they should have left Albin and Bowman to agree upon an umpire without any suggestions from them, and it was incumbent upon them to appoint as an appraiser, not a partisan to protect their interests, but a disinterested person. 100 S.W. at 234.

Here, Plaintiffs' demanded appraisal and U.S. Fire resisted on the grounds that the dispute between the parties was not subject to appraisal. The Court held the dispute was subject to appraisal under the terms of the insurance policy. Generally, where the appraisal clause applies, "compliance with [the appraisal] provision is a condition precedent to bringing an action on the contract". Windt, 2 Ins. Claims & Disputes (5th), § 9:33, citing *F.C.I. Realty Trust v. Aetna Cas. & Sur.* Co., 906 F. Supp. 30, 33 (D. Mass. 1995); *Director v. South Carolina Ins. Co.*, 49 Or. App. 179, 619 P.2d 649, 651–52 (1980); *Transamerica Ins. Co. v. Weed,* 420 So. 2d 370, 372 (Fla. Dist. Ct. App. 1st Dist. 1982); *Aetna Cas. & Sur. Co. v. Insurance Com'r,* 293 Md. 409, 445 A.2d 14, 16 (1982); *U.S. Fire Ins. Co. v. Franko*, 443 So. 2d 170, 172 (Fla. Dist. Ct. App. 1st Dist. 1983). Furthermore, "an insured's noncompliance with an appraisal clause...precludes coverage where appraisal is made a condition precedent to coverage." Russ, Segalla, 5 Couch on Insurance, § 210:55, citing *United Community Ins. Co. v. Lewis,* 642 So. 2d 59 (Fla. Ct. App. 3d Dist. 1994).

Likewise, the courts have held that where an appraisal fails because of the conduct of the insured, the insured is barred from maintaining suit against the insurer, *St. Paul Fire & Marine Insurance Company,* 129 Tenn. 55, 164 S.W. 1186, 1189 (1914) ("Where appraisers are appointed and the arbitration fails, by reason of the fraud or intermeddling of the insured, the right to sue on the policies is lost."); See also: *Reilley v. Agricultural Insurance Co. of Watertown, N. Y.*, 311 Ill. App. 562, 567, 37 N.E.2d 352, 354 (Ill. App. 1941); *Carp v. Queen Insurance Company of America,* 104 Mo. App. 502, 79 S.W. 757, 760 (Mo. App. 1904).

Plaintiffs should not be permitted to invoke this Court's authority to compel the appraisal process and then work to undermine the fairness of the very process they sought to resolve their differences with U.S. Fire. Having fought for and obtained an order that the dispute between the parties is subject to appraisal, Plaintiffs' must live with the consequences of that order. Appraisal is a condition precedent to recovery. Having caused the failure of the appraisal process by destroying the appraisers' ability to function as the fair and impartial tribunal for resolution of their dispute with U.S. Fire, Plaintiffs are now unable to satisfy a condition precedent to recovery under the insurance policy, and their claims against U.S. Fire must be dismissed.

Alternatively, Plaintiffs must at least suffer the fate that would have befallen U.S. Fire, had it caused the appraisal to fail. Where an appraisal fails because of the insurer's conduct, the insurer has waived compliance with the appraisal provision of the policy, *Continental Insurance Company v. Vallandingham & Gentry,* 116 Ky. 287, 76 S.W. 22, 24 (1903); *Ex parte Birmingham Fire Ins. Co*., 233 Ala. 370, 373-74, 172 So. 99, 101 (1937). By thwarting the appraisal process, Plaintiffs' have, at the very least, waived their right to insist on appraisal and the Court should set this matter for trial.

**WHEREFORE,** Defendant U.S. Fire prays this Honorable Court enter an order dismissing Plaintiffs' lawsuit with prejudice or, in the alternative, holding that Plaintiffs, by their conduct, have waived their right to appraisal under the insurance policy and setting this matter for trial.

Respectfully submitted,


s/Michael L. Foran
Michael L. Foran
Michael A. Kuiken
Foran Glennon Palandech Ponzi & Rudloff, PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
(312) 863-5000
mforan@fgppr.com
mkuiken@fgppr.com


And

William S. Wetterer III
Wetterer & Clare
2933 Bowman Avenue
Louisville, Kentucky  40205
(502) 451-3030
Bill@WettererClare.com

Attorneys for Defendant
UNITED STATES FIRE INSURANCE CO.

16