# EXHIBIT C to Affidavit of M. Foran

# FORAN GLENNON PALANDECH PONZI & RUDLOFF

September 7, 2012

**VIA E-MAIL**

Mr. Eric M. Lamb
Lamb & Lamb PSC
P.O. Box 34275
Louisville, KY  40232-4275

|  | | |
|---|---|---|
| Re: | Claim#: | BDU00418120 |
|  | Policy#: | 2441900565 |
|  | Location: | The Woods Apartments, Jeffersonville, IN |
|  | Date of loss: | September 14, 2008 – Hurricane Ike |
|  | Our File No.: | 33160 |

Dear Mr. Lamb:

As you know, we received a copy of the e-mail that you sent yesterday to the appraiser appointed by your clients in this matter, Richard Moore. You also left the following voicemail at 10:54 a.m. (EDT):

"It's Eric Lamb, Mike, uh, we're gonna accommodate this guy Caldwell's inspection. I'm not sure whether he's not getting an expert or what, but we do have somebody, actually it's Richard Moore who could be there, may not be there the whole time, may be there, meet 'em, let 'em start doing their stuff and may be around and available while they're doing the rest of the inspection. Uh, I'm trying to come to an understanding today of what he's trying to do next week. Uh, thank you."

I called and left you a voicemail yesterday afternoon and let you know I would follow up with an e-mail regarding your purported attempt to understand what the appraisers were "trying to do next week". I then sent you the e-mail which is enclosed and you, almost immediately, responded that you would call. The call came to my office at 8:28 p.m. yesterday night and you left the following voicemail:

"It's Eric Lamb, Mike. I'm trying to see what the argument– what the issue is, I'm pretty sure you pay your appraiser, we pay our appraiser; you're gonna pay his travel. I don't know that we need our appraiser there the entire three days. I think they were gonna greet you, go up on a roof or two with them and then meet then afterwards and talk to them afterwards. Uh, you need a ladder. Uh, I think we might have a ladder there. I think Blankenbaker might buy a ladder, he needs one anyway or we can have somebody that has a ladder. So, trucks, they never go up on trucks

**Michael L. Foran**, *Attorney at Law*, direct 312.863.5080, email mforan@fgppr.com
Foran Glennon Palandech Ponzi & Rudloff PC    *Attorneys at Law*    Chicago | New York | San Francisco | Newport Beach
222 North LaSalle Street, Suite 1400, Chicago, Illinois 60601, tel 312.863.5000, fax 312.863.5099, www.fgpp.com

Mr. Eric M. Lamb
September 7, 2012
Page 2 of 3

> there. So, uh….everybody pays for their own meals so I don't understand what the debate is about on the expenses, uh… but if you're guys there for the 3 days, we're gonna have him there that doesn't mean we want out guy on the roof for the 3 days. Uh…I don't know whether you're bringing an expert either, but uh…we don't want to put our guy on there and try to have a shingle by shingle debate with him so I don't understand what the issue is right now, uh, and I guess that's what I'm saying."

If you want to understand what Mr. Moore and Mr. Caldwell, the appraisers appointed by the parties, are planning on doing next week, we suggest you look at the pleadings you filed in this case, specifically Docket # 42 – Plaintiffs' Motion to Enforce the Appraisal Clause. Particularly on page 6, where you said "The Appraisal process is a means of Alternative Dispute Resolution designed to effectively and cost efficiently resolve disputes over the amount owed on an insurance loss by avoiding the substantive and procedural nuisances typically associated with the legal process . . .", and page 7, where you said "Appraisal would proceed without attorneys present, without presentation of expert witness testimony and without cross-examination."

The appraisers are doing what is necessary to conduct an appraisal of the Hurricane Ike damage to The Woods, consistent with Judge Coffman's May 30, 2012 and July 6, 2012 orders. We understand Mr. Moore and Mr. Caldwell agreed to the inspection procedures, so they could each make their independent evaluation of the Hurricane Ike damage to the roofs. Your comments about "bringing an expert" make no sense; Messrs. Moore and Caldwell are the ones who are making the assessments of the Hurricane Ike damage as the respective appraisers appointed by the parties. As you know, by virtue of Judge Coffman's July 6, 2012 order, the appraisers are under an obligation to "provide any additional information materials to each other and to meet and jointly inspect the property" by September 14, 2012.

We are particularly concerned about your comments "but if you're guys there for the 3 days, we're gonna have him there that doesn't mean we want out guy on the roof for the 3 days", and "we don't want to put our guy on there and try to have a shingle by shingle debate with him", as those comments suggest you believe the parties have a right to interfere with and control the appraisal process. That is simply not the case and would subvert the whole purpose of appointing "competent and impartial" appraisers to determine the value of the loss. What you or I or our respective clients "want" at this time is irrelevant. What is relevant is what the appraisers want to do to discharge their obligation to appraise the value of the loss. They agreed on a protocol for assessing the damage to your clients' property and it is not your place, my place, or anyone else's place to disrupt, modify or thwart that protocol.

That it may take three days for the appraisers to inspect the roofs is understandable, considering your clients have claimed damage to 18 buildings, with however many

Mr. Eric M. Lamb
September 7, 2012
Page 3 of 3

thousands of square feet of roofing surface. As for the expense involved, the expense of appraisal is certainly less than the cost of litigating the dispute through trial. However, expenses will be incurred, and the provision of the policy under which Judge Coffman ordered the appraisal to proceed makes clear that the parties bear the costs of their respective appraisers themselves, and then split the remaining expenses associated with the process. Your clients could always avoid any expenses altogether by dismissing their claims with prejudice. Assuming your clients are not interested in dismissing their claims, they must bear the expenses of the process that they invoked before Judge Coffman and which Judge Coffman ordered to proceed.

Finally, we are concerned about the fact that Mr. Moore copied Richard Michelson on the e-mail that forwarded your e-mail to Mr. Caldwell. We have heard no suggestion that the appraisers are doing anything improper, or anything but what is required of them by Judge Coffman's orders. However, Judge Coffman clearly ordered that Mr. Michelson could not act as your clients' appraiser in this matter. We will strenuously object to any attempts on your part or your clients' part to involve Mr. Michelson in the appraisal process or to have Mr. Moore act as Michelson's beard.

Please confirm that your clients will make the property available and allow the appraisers to proceed with the inspections as they had agreed among themselves. If you are going to act otherwise, please let us know so we can address the appropriate motion papers to Judge Coffman.

Very truly yours,

Foran Glennon Palandech Ponzi & Rudloff PC

By:   Michael L. Foran

Enclosure

MLF:bc