**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| THE WOODS APARTMENTS, LLC,<br>MICHAEL BLANKENBER and<br>PROFESSIONAL PROPERTY MANAGERS, LLC | ) Court No.: 3:11-cv-00041-JBC<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| Vs | )<br>)<br>) |
| UNITED STATES FIRE INSURANCE CO., and<br>CRUM & FORSTER, A FAIRFAX COMPANY | )<br>)<br>) |
| Defendants | ) |

**MOTION TO CLARIFY AND RECONSIDER ORDER OF 07/29/13**

* * * * *

Plaintiffs, by counsel, are constrained to file this motion to clarify and reconsider the Memorandum Opinion and Order rendered by this Court on 07/29/13 (Dkt 94).

Counsel recognizes that it is unusual to request a Federal Court to reconsider a decision which has been rendered.  However, the circumstances of this case are such that the Court may agree that reconsideration and/or clarification is warranted.

The Order is consistent with the Court possibly agreeing that an insured such as these plaintiffs is entitled to matching, when warranted by the facts.  The Order provides that the Appraisers and Umpire are to determine the cost of the repairs and replacement of the damaged area with material of comparable kind and quality

to obtain an overall "reasonably uniform appearance".  Plaintiffs contend that whether a reasonably uniform appearance can be obtained was and is to be determined by the Appraisers and if they cannot agree by the Umpire.  It is the position of plaintiffs that they were not required to prove their case at this time, and nor is that consistent with the understanding of plaintiffs of the purpose and agreement of seeking the ruling on matching from the Court.

Plaintiffs wish to clarify that the Order on matching is not dispositive of other issues which have not been addressed to the Court, such as that it may be necessary depending upon the ultimate resolution of the facts to replace all of the shingles, so that the roof can bond as is necessary in order for plaintiffs to obtain a functional roof with a reasonable life expectancy.

Plaintiffs do not herein re-brief the law on the so-called "Matching Issue", and instead will incorporate by reference the legal discussion set out in the simultaneous briefs and response briefs which the parties filed simultaneously regarding this issue (Dkt 88 & 92-93).

## FACTS - HISTORY OF PROCEEDINGS

A brief summary of the facts and a history of the proceedings is a point of departure.  Plaintiffs filed their herein action seeking damages and a declaratory judgment of the rights of the parties regarding plaintiffs claims for insurance coverage from defendants for damages resulting from a hailstorm on 08/16/07 and Hurricane Ike on 09/13-14/08.

Defendants counterclaimed for a declaratory judgment and asserted as an affirmative defense that the statute of limitations for plaintiffs to file an action for the hailstorm claim of 08/16/07 had expired.

The case was bifurcated (Dkt 15) and after briefs were filed and considered, the Court ruled in favor of defendants regarding the statute of limitations issue on the hailstorm claim (Dkt 39).

The insurance contract contains a clause providing for a procedure known as appraisal, which is similar to but more informal than arbitration (e.g., formal evidence is not introduced, expert reports are simply exchanged, the rules of evidence are inapplicable).  Plaintiffs filed a motion to enforce the appraisal clause (Dkt 42) and the Court ultimately rendered an Order granting plaintiffs' motion (Dkt 51) which explained how the appraisal was to proceed.

An Order in which the appraisal was to proceed was entered (Dkt 54) which provided that after an exchange of documents, the Appraisers would jointly inspect the damaged premises in early 09/12.  After that, the Appraisers were to attempt to settle the claim and if not to agree upon an Umpire who in effect would serve as a tiebreaker.

As of the time the appraisal commenced, plaintiffs did not obtain a definite expert report.  The Scheduling Order (Dkt 54) allowed plaintiffs until the same date when the Appraisers were to complete their inspection of the property to submit the report from plaintiffs' expert.  Defendants previously had a report from their expert, Donan Engineering, which was obtained when the property was inspected

on 12/22/08 when the claim was denied, which report has been filed herein (see Dkt 92-2).

What is most important to note is that in this particular appraisal, plaintiffs had not yet prepared or submitted all of the evidence which would be ultimately obtained and submitted in evaluating the claim.  The concept was that the Appraisers were competent to evaluate the damage themselves, and that they would obtain necessary information on their own inspection of the property to be considered together with the document submitted to them by the parties.

An inspection and appraisal of the property in this case was terminated upon a motion of defendants to dismiss and for other sanctions because of alleged interference in the appraisal process (Dkt 55).

Although plaintiffs objected to the motion filed by defendants, the Court ruled in part in favor of defendants on their motion and disqualified plaintiffs' Appraiser, Richard Moore (Dkt 68).

There are some issues which had arisen during the inspection which were not the subject of the motion for sanctions and the ultimate ruling of the Court disqualifying plaintiffs' Appraiser.  Counsel for the parties discussed all of these issues with each other in an effort to obtain an agreement that would allow the appraisal process once resumed to move smoothly.  Part of this agreement was that the parties would brief to the Court for a ruling in this a declaratory judgment proceeding their conflicting decisions regarding what was identified and described as the "Matching Issue".  This was done to insure that the ruling ultimately made by the Umpire if the case was not settled in appraisal would be consistent with the law.

Accordingly, briefs were filed on that Matching Issue (Dkt 89-90 & 92-93) and the Court rendered the Order which is a subject of this motion (Dkt 94).

## <u>PLAINTIFFS' UNDERSTANDING OF THE PROCEDURE APPLICABLE TO THE ORDER OBTAINED ON THE MATCHING ISSUE</u>

The ruling which was sought from the Court was not perceived or understood by plaintiffs to be the nature of a motion for summary judgment.  Unlike a traditional civil proceeding in which the appraisal clause is not invoked, the parties had not yet completed discovery or exchanged the reports of experts.  The reports of plaintiffs' expert had not yet been obtained as the evidence on which plaintiffs expert would rely had not yet been assembled nor was it due to be assembled until 10 days after the new Appraiser of plaintiffs was nominated (Dkt 81).  Plaintiffs' expert report was just recently obtained on 08/20/13 consistent with this Order and the agreement of the parties.   It was not plaintiffs' understanding that they needed to do all of the things which a party would do to oppose a summary judgment motion, such as proffer certain proof to establish a triable issue of fact, nor were plaintiffs in a position to do so, as they had not been presented with a summary judgment motion, they had not had chance to consider exactly what proof on which defendants would rely.  Unlike a civil proceeding, in appraisal the concept is that the reports and documents will be obtained during the appraisal process, which had not yet happened in this case at the time of the ruling that the Court rendered on the Matching Issue and the Appraisers and Umpire, who will ultimately determine the facts, had not yet inspected the property.  The case was in the posture of a Jury Trial which had not yet commenced and in which no summary judgment motion had been made.

In the first motion that plaintiffs filed in support of their initial memorandum on the Matching Issue (Dkt 89), plaintiffs did proffer some proof including an affidavit from plaintiffs' expert Mike Mayor, but did not introduce all of the evidence which would have been introduced at a Jury Trial before requesting an instruction or opposing a motion for a directed verdict, or as they would have if they were writing a brief in opposition to a motion for summary judgment.  The affidavit of Mike Mayor which was filed in support of the motions of plaintiffs regarding the Matching Issue (Dkt 89-1) does proffer evidence in paragraph 7 that The Woods Apartments is a large apartment complex in which it suffered damage as a result of Hurricane Ike requiring the replacement of 25% to 50% of the shingles on the roof and a similar percentage of the siding in such a manner as to be cosmetically different than the adjacent parts of the structure and other structures and that repairing the damage "will require repairs of the adjacent parts of the roofing and siding which has not been damaged as severely, in order to achieve cosmetic matching".  It was the understanding of plaintiffs that this was inclusive of an opinion on the part of Mr. Mayor, a qualified expert on roofing and siding, that it is not possible to obtain cosmetic matching by simply purchasing shingles and siding to match the rest of the roof.  The inclusion of a more detailed explanation by Mr. Mayor was not believed to be needed by plaintiffs, nor were plaintiffs in an ideal position at the time to provide a more detailed explanation.  This was after all a report from an expert and plaintiffs thought that the report was sufficient and in any event contend that it should have been considered in the light most favorable to them.

Plaintiffs did explain in their memorandum (Dkt 89) that should it ultimately be found by the Appraisers and Umpire in the appraisal process that as a matter of fact cosmetic matching cannot be achieved without replacing some or all of the shingles which were not directly damaged by Hurricane Ike, that as a matter of law plaintiffs were entitled to that cosmetic matching.  It is the position and understanding of plaintiffs that the issue for the Court to decide was not whether as a matter of fact plaintiffs are entitled to matching, but whether the Appraisers upon consideration of all the evidence including their inspection of the premises, all of the photographs that they would take which have not yet been exchanged by the parties, and the expert reports such as the report of Mr. Mayor that matching was required that plaintiffs would be entitled to matching.

In their initial brief, defendants included some but not much discussion of the facts.  Defendants (actually defendants have been filing pleadings on behalf of only one defendant) discussed the law which they contend is applicable to matching as a conceptual matter.  Defendants did mention at page 6 that plaintiffs bear the burden of proving with properly admitted evidence that the repair of only the damaged portions of the property somehow cannot be affected and that plaintiffs need to establish the nature of the appearance of the now damaged portions of the property and the unavailability of the non-existence of replacement materials that are of comparable material in quality, and that plaintiffs had not at that point offered a "scintilla of such evidence in this case" and thus were only entitled to repair and replace the portions of the property actually damaged by Hurricane Ike.

It is not the belief of plaintiffs at that point based on the agreement which had been made to put this matter to the Court that they were then required to come forward with evidence necessary to prove their case.  It was the belief and understanding of plaintiffs that what was being sought was in the nature of an instruction (somewhat like a Jury instruction) for the benefit of the Appraisers and Umpire to be applied to the facts after they were obtained and established through the appraisal process.  Nevertheless, plaintiffs did provide what they contend was a sufficient proffer to establish that there could be a basis to find a need for matching and for findings that matching was necessary under the facts of the case.

Response briefs were to be filed simultaneously by the parties, but defendants filed their brief first (Dkt 92).  Counsel for plaintiff as a matter of honor did not read the brief of defendants before filing his response brief a number of hours later on the date when it was due (Dkt 93).

In their response brief, for the first time, defendants got into some details about the facts and filed an affidavit of a Gilbert Arnold of Donan Engineering, who is defendants' expert, who had inspected the property on 12/22/08.  Defendants argued that the facts show that comparable shingles and siding were available to repair any damaged portions of the property and based on these affidavits that plaintiffs' own records confirm going back to 2008 that plaintiffs have in effect repaired damaged roofing and siding by simply repairing the areas which are damaged (see argument of defendants at page 2 of Dkt 92).  Defendants argued as a matter of fact that plaintiffs were trying to use the matching as a "trojan horse" to

obtain a remedy of repairs and restitution for the hail damage claim which the Court had dismissed (see footnote 2 at page 7).

These arguments were inconsistent with the understanding of counsel for plaintiffs that the motion was not to be treated as a motion for summary judgment or that he would be required to anticipate and respond to such arguments in the motion which had been filed.

However, plaintiffs did argue in their response brief (Dkt 93) at page 2 in the first full paragraph that they had additional time to submit expert reports and that the motion was not means through which findings of fact were to be made or evidence was to be considered.  However, plaintiffs further argued in their response brief (Dkt 93) at page 15 that although plaintiffs do bear the burden of proof, that the evidence had not yet been submitted or evaluated by the Appraisers, and that the ruling which was being requested of the Court was being sought for guidance to the Appraisers based on their findings, which had not been made.  After all, what was contemplated here was a three day inspection of a massive twenty building complex by the Appraisers, which had not yet been completed and from which much of the evidence was to be obtained.  Plaintiffs felt that the explanation they provided through the affidavit of Mr. Mayor that the magnitude of the damage and that the repairs could not be made in a cosmetically acceptable manner was sufficient.  It was the disposition of plaintiffs that there was a sufficient showing and explanation to any extent necessary in the motions and affidavits submitted by plaintiffs that this was not the case of someone trying to repair and entire door because a

doorknob was broken or replace all of the siding merely because one small part had been damaged.

Plaintiffs waited to file this motion until they had their expert report from Mike Mayor, which was prepared and filed on 08/20/13.  The parties had formally agreed to some extensions of time to extend the time for the exchange of documents which was to follow the ruling of this Court on the matching issue pursuant to the Amended Scheduling Order (Dkt 87).

The second affidavit of plaintiffs' expert Mike Mayor has been attached hereto as Exhibit 1, to which his updated qualifications, the report he has now prepared dated in compliance with the Scheduling Order and agreement of the parties on 08/20/13 .

The salient opinions of Mike Mayor (for purposes of this motion) include:

1.      Even according to the Donan Engineering report of 12/22/08, the size of the hail in the storm of 08/16/07 was less than one-half inch.  Although the hail did cause substantial damage to the roofs, Hurricane Ike caused much more severe damage (2nd page, 4th full paragraph).

2.      The magnitude of the damage to The Woods Apartments was such that 20% to 25% of the siding was damaged and 25% to 50% of the roof was damaged (page 3, 2nd full paragraph).

3.      The extent of the damage to the shingles on the roof and the siding is discussed in detail through the report and to the extent that the weight of evidence is important, all of it should be reviewed.

4.      It is necessary that the roof be replaced in such a manner that will allow the shingles to <u>bond</u> into one cohesive system.  Otherwise, the shingles will be unsealed, water can flow through the gaps and the shingles can become deformed, ultimately causing the roof to fail (page 6, 2nd and 3rd full paragraphs of report and paragraph 11 of second affidavit of Mike Mayor filed herewith).

5.      Shingles that are sold under the same color name vary as the dye lots are charged.  Color of composition shingles darkens as they age, due to dirt, algae, and exposure to the weather.  Considering the extensive damage to these roofs, there will be glaring color inconsistencies without a complete replacement. Although custom siding can be obtained for matching purposes, custom shingles cannot be obtained for matching purposes (page 6, 3rd and 4th full paragraphs).

6.      The new damage caused by Hurricane Ike is of such a nature that it in itself is a reason for the entire roof to be replaced (page 6, last paragraph).

7.      Siding oxidizes and fades as it ages.  The causes discoloration and changes in appearance of the existing siding.  Additionally, the dye lots of the original siding which had been on the building for over 10 years are now different than dye lots of siding produced today.  The cost of custom matching replacement siding to match the old siding in a magnitude necessary for replacement and have a reasonable cosmetic appearance, would be excessive.  All of the siding must be replaced (page 7, 7th paragraph).

8.      Regarding the report of Donan Engineering which was filed by plaintiffs in their response brief and discussed by the Court, Donan only inspected some of the buildings, inspected the siding from the ground and made no comment

about the siding.  The report of Donan establishes nothing regarding the siding. Donan does not mention any hail damage to the siding in his report of 12/22/08 (bottom of page 7 - top of page 8).

This report was prepared as explained in the affidavit of Mike Mayor based on a review of all the documentation now available including affidavits of witnesses, weather reports and the repair history (see paragraph 9 of Mike Mayor affidavit).

Plaintiffs do not wish to burden this Court with a review of evidence as if this was a mini-Trial, but at this point, plaintiffs are constrained to discuss the reasons why they did not provide more evidence with their original motion.

Significantly, the report of Donan Engineering which was relied upon by defendants and referenced by the Court in a footnote on page 7 does not necessarily establish that the damage from the hailstorm was as significant as the damage from Hurricane Ike and that that damage had been repaired in such a way as to not cosmetically match the rest of the roof.  Further, Donan did not even address the siding in the report of 12/22/08.

In rendering the Opinion and Order, the Court comments in a footnote on page 3 that defendants' response had indicated that shingles and siding were presently available to repair the damaged portions of the property in 2008. However, plaintiffs had presented conflicting evidence in support of the previous motion, which states in paragraph 7 that the damage in 2008 had been temporarily replaced in such a manner as to be cosmetically different from the adjacent parts of the structure and other structures.  It would seem to be a significant factor in the Court's Order of 06/29/13 that plaintiffs had not controverted the evidence on that

point.  Plaintiffs had controverted the evidence on that point.  (It is noted that the paragraph 9 of the affidavit was not repaginated properly, but that has no bearing on the matters at issue now).  As plaintiffs discussed as page 4 of its response brief regarding the Matching Issue (Dkt 93), the affidavit of plaintiffs' expert Mike Mayor is consistent with a finding that the damage was of such a magnitude that if defendants were required only to repair those parts of the roof and siding which are directly damaged, plaintiffs would be left with a multi-colored, speckled unsightly building that no one would want to rent and tenants would prefer not to reside.

The Court is asked to consider and take judicial notice that as we drive through the community, when roofs and siding is replaced, by insurance companies and otherwise, it is tends to be completely replaced.

Cases are to be decided on the merits.  Clarification that plaintiffs are entitled to matching and bonding should the Appraisers agree or the Umpire ultimately rules in their favor does not mean that plaintiffs have yet prevailed in the case.  The case still needs to go through the appraisal process which according to the agreement of the parties is to be trusted as a process through which this case could be fairly resolved.  It is provided for in the insurance contract for which plaintiffs paid premiums.

Ultimately, the appraisal process is established by contract as a matter of right for plaintiffs.  The appraisal process is provided for in a contract written by defendants.  That the appraisal process contemplates that the Appraisers who are appointed and ultimately the Umpire who is appointed as may well be necessary are competent to make proper and fair judgments on the facts.  What plaintiffs thought

this was about in making its herein motion regarding the matching issue was obtaining something comparable to a Jury instruction for the Appraisers and Umpire to consider after the evidence was in, and with the understanding that the evidence was not in.

It is noted though that the replacement cost provisions of the contract are not an issue now, that is something that is trusted to be resolved properly through the appraisal process.

In the Memorandum Opinion and Order, the Court cites with approval Greene v. United Services Auto. Ass'n, 936 A.2d 1178 (2007).   Green is a case which was decided after evidence was admitted in a non-Jury trial.  The ruling made by the Court in Green was based on an evaluation of all the evidence, after it had been introduced.  In this case, the evidence has not been introduced.  This is not yet the time to decide if plaintiffs are making outlandish claims to replace the entirety of the roofs only because of small and inconsequential damage which does not justify replacement of the entire roof and siding.  The Court in Green at page 1185 discussed that the ambiguities in the contract regarding replacement were to be resolved against the insurance company which drafted it and at page 1186 that testimony at Trial revealed that shingles of a similar color and texture were available for replacement.  The Green case appears not to have involved a bonding issue.  The decision in Green is consistent with a view that had a need for matching been established as a matter of fact, matching was in order.  The Order which has been rendered provides that ultimately the damage is to be replaced with material of comparable kind and quality to obtain an overall reasonably uniform appearance.

It is the position of plaintiffs that whether that uniform appearance can be obtained is to be determined by the Appraisers and Umpire after the evidence is in.

The way this case has gone has not been the best for plaintiffs. Plaintiffs did not have their claim for damage by the hailstorm denied on the merits, it was denied because a deadline had expired. Although they did not wish to contend the statute of limitations as a technicality, it is a disposition other than on the merits.

The 12/22/08 report of Donan Engineering which defendants happened to have in their possession as part of the required procedure to deny the claim was used as a basis at first to deny that the hailstorm caused such damage as to require any substantial reimbursement to plaintiffs. Now that same report is being used as a basis of claim that Hurricane Ike is being used by defendants as a Trojan horse to reveal the damage from the hailstorm, with defendants now suggesting based on this same report that the hailstorm damage was significant.

It is the understanding of plaintiffs in seeking a ruling on this Matching Issue from the Court that this was just a ruling on the law and that the facts would be determined by the Appraisers after the inspections and after all of the evidence and documents were accumulated and considered.

It was the understanding of plaintiffs that nothing was done, that the Matching Issue was not inclusive of a ruling on the bonding issue. Plaintiffs are considering filing a separate motion on the bonding issue.

An appropriate Order is tendered.

Respectfully submitted,


_____/S/ ERIC M. LAMB_____
ERIC M. LAMB
LAMB & LAMB, PSC
P.O. Box 34275
Louisville, KY  40232-4275
Email:  eric@lambandlamb.com
Phone:  (502) 451-6881, ext. 11

COUNSEL FOR PLAINTIFFS




## **CERTIFICATE**

It is hereby certified that a copy hereof was served electronically this 30th day of August, 2013 on the parties entitled to service.


_____/S/ ERIC M. LAMB_____
ERIC M. LAMB



L:\Eric Lamb\Eric Lamb Client Info Sheets 1\Blankenbaker, Mike\Pleadings\Motn to Clarify & Reconsider Order.doc